E. Bourquin, *Appellee,* v. The Missouri Pacific Rail-
way Company, *Appellant.*

No. 18,252.

SYLLABUS BY THE COURT.

1. Motion for New Trial—*Sustained—Assumption.* Where a
   motion for a new trial on all the statutory grounds has been
   sustained generally this court on appeal will assume, in sup-
   port of the ruling, that the trial judge was not able to recon-
   cile the verdict with what he regarded as the true weight of
   the reliable testimony.

2. Duty of Court—*Grounds for Sustaining Motion.* A motion
   for a new trial on several grounds is, in effect, a separate
   motion on each ground, and the better practice would be for
   the trial court, when sustaining such a motion, to state
   frankly on the record the specification or specifications which
   are upheld and those which are overruled.

3. Evidence—*Records—Superintendent of Railroad Transporta-
   tion.* Under the rule dispensing with the production of
   voluminous or multifarious documents when impracticable,
   and the facts stated in the opinion, it is held that a record in
   the office of the defendant's superintendent of transporta-
   tion, consisting of tables summarizing the use and movement
   of freight cars on defendant's lines for each month of a
   series of years, compiled by his office force under his super-
   vision from information derived from many reports, tele-
   grams and other communications from various persons, was
   properly admitted in evidence as tending to show an abnormal
   rush of business and congestion of traffic in one of the months
   of the tabulation.

Appeal from Labette district court. Opinion filed
November 9, 1912. Affirmed.

*C. E. Benton,* and *W. P. Dillard,* both of Fort Scott,
for the appellant; *Francis M. Brady,* of Oswego, of
counsel.

*Archie D. Neale,* of Chetopa, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The plaintiff sued the defendant for damages for failure to furnish cars ordered for the shipment of hay, and for the penalty affixed for violation of the reciprocal demurrage law. (Gen. Stat. 1909, § 7203.) A verdict was returned for the defendant, which the court set aside, and the defendant appeals from the order granting a new trial.

The motion for a new trial contained several grounds, one of which was that the verdict was contrary to the evidence. The record does not show on what ground the motion was sustained. Under the long-settled practice it will be assumed that the court was not able to reconcile the verdict with what it regarded as the true weight of the reliable testimony. Although the jury, while in possession of the case, were the exclusive judges of the credibility, weight and effect of the evidence, when the trial judge was called upon to consider the motion for a new trial it was essential that he should be satisfied with the verdict or else sustain the motion.

A motion for a new trial on several grounds has the effect of a separate motion on each ground, and in justice to litigants the trial judge should state frankly upon the record, when granting a new trial, the specification or specifications of the motion that are sustained and those that are overruled. If this were done the litigation would be ended, in many cases, by an appeal to this court. In this case a suggestion comes from outside the record that the new trial was probably granted because the court was of the opinion that certain important evidence had been wrongfully received, and for no other reason. If the record disclosed that such was the fact a new trial would not be necessary since, as will appear later, this court is of the opinion that the evidence was properly admitted. In most in-

Bourquin v. Railway Co.

stances a blanket ruling is quite unfair, and justice would be promoted if the practice suggested were generally adopted.

The defendant claimed it could not comply with the plaintiff's demand for cars for causes which could not be avoided by the use of reasonable foresight and diligence. (Gen. Stat. 1909, § 7201.) In support of this claim evidence was introduced tending to show an abnormal rush of business and congestion of traffic in the month of October, 1911, when the plaintiff's requisitions were made. (*Milling Co. v. Railway Co.*, 82 Kan. 256, 263, 108 Pac. 137.) A portion of this evidence consisted of two tables, summarizing the total number of loaded cars moved on the defendant's lines in each month from July, 1905, to January, 1912, and the total number of cars of revenue freight loaded locally for the same period. In each instance the figures for the month in question were far above those for any other month, proximate or remote, in the series. The summaries were contained in a book produced by the defendant's superintendent of transportation, who had charge of the movement of traffic, passenger and freight, and the disposition of cars and engines. He testified that at the close of each month's business a record was made of it, in the form presented, for the use of the officers and employees of the railway company, that the book was a record of his office and that the condensed matter it contained was correct and was compiled under his supervision by his office force from information derived from various sources, including reports of division superintendents and others, telegrams, and even communications from local agents. It is claimed by the plaintiff that the admission of this evidence, over objection, constituted error of law which warranted the court in setting aside the verdict.

The evidence was clearly material and it was manifestly impossible to produce in court the mass of data

summarized, either for consideration by the jury or for purposes of cross-examination. If the original memoranda could have been resurrected, identified and offered the items would have been too numerous and diverse for the jury to deal with intelligently. It would have been necessary to epitomize the information afforded before its probative value could be comprehended, and the genuineness of the tabulation presented could be fairly tested by cross-examination of the witness under whose supervision it was made. The general rule dispensing with the production of voluminous or multifarious documents when impracticable is discussed in 2 Wigmore on Evidence, § 1230, as follows:

"Where a fact could be ascertained only by the inspection of a large number of documents made up of very numerous detailed statements—as, the net balance resulting from a year's vouchers of a treasurer or a year's accounts in a bank-ledger—, it is obvious that it would often be practically out of the question to apply the present principle by requiring the production of the entire mass of documents and entries to be perused by the jury or read aloud to them. The convenience of trial demands that other evidence be allowed to be offered, in the shape of the testimony of a competent witness who had perused the entire mass and will state summarily the net results. Such a practice is well established to be proper. Most Courts require, as a condition, that the mass thus summarily testified to shall, if the occasion seems to require it, be placed at hand in court, or at least be made accessible to the opposing party, in order that the correctness of the evidence may be tested by inspection if desired, or that the material for cross-examination may be available."

This court has lately applied the rule against a railway company in an action prosecuted under the reciprocal demurrage law.

"Another contention is that the court erred in admitting hearsay testimony by a Mr. Smith, manager of the plaintiff corporation, as to the amount of grain he had on hand to fill the cars, etc., which it was claimed was not within his personal knowledge, but was derived

from the books of the company, reports of subordinates, etc. If the rule contended for by the appellant is correct, it would render it impossible in the management of large concerns to furnish evidence concerning many of the affairs of the company unless bits of paper, upon which workmen jot down memoranda of their doings, were preserved and verified by their evidence. We can not enforce such a rule." (*Grain and Lumber Co. v. Railway Co.*, 85 Kan. 281, 287, 116 Pac. 906.)

The data upon which the summaries in question were based assembled in one form or another before the superintendent of transportation as necessary information for his management of the defendant's traffic, and the fact that he did not personally compile the final records does not detract from their competency as evidence. (*Darling v. Railway Co.*, 76 Kan. 893, 898, 93 Pac. 612; 2 Wigmore on Evidence, § 1530.)

Sometimes tables of statistics relating to corporate affairs are too indefinite, incomplete or general, or are otherwise too untrustworthy to furnish a safe basis for inference. (See *Tucker v. Railway Co.*, 82 Kan. 222, 108 Pac. 89.) In a clear case the court ought not to permit the jury to be confronted with them. In this instance the good faith of the record offered and the credibility of the witness who assumed responsibility for it were properly left to the jury.

The court is of the opinion that there was sufficient evidence to go to the jury on the question whether or not the plaintiff had on hand at the time demands for cars were made the amount of hay necessary to load them.

The judgment of the district court is affirmed.